UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM D. FARLEY,<br><br>           Plaintiff,<br><br>      v.<br><br>T. VIRGA, et al.,<br><br>           Defendants. | No. 2:13-cv-1751 WBS KJN P<br><br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant to 42 U.S.C. § 1983.  Pending before the court is plaintiff's motion for injunctive relief filed June 10, 2014.  (ECF No. 56.)  For the following reasons, the undersigned recommends that plaintiff's motion be denied.

Background

This action is proceeding on the amended complaint filed November 13, 2013, as to defendants Virga, Meier, Stewart, Scogin, Gonzales, Higgins, Delony, Hamkar and May.  (ECF No. 11.)  All defendants are located at California State Prison-Sacramento ("CSP-Sac").  At the time plaintiff filed his June 10, 2014 motion for injunctive relief, plaintiff was housed at California State Prison-Corcoran ("Corcoran").  (ECF No. 56.)  In the motion for injunctive relief, plaintiff alleged that he was not receiving adequate medical and mental health treatment at Corcoran.  (Id.)

On July 21, 2014, the undersigned recommended that plaintiff's June 10, 2014 motion for injunctive relief be denied. (ECF No. 65.) The undersigned found that plaintiff sought injunctive relief against individuals not named in this action, i.e., prison officials at Corcoran. (Id.) Because the court is unable to issue an order against individuals who are not parties to a suit pending before it, the undersigned recommended that plaintiff's motion for injunctive relief be denied. (Id.) See Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 112 (1969).

On September 23, 2014, the Honorable William B. Shubb remanded this matter for further consideration. (ECF No. 76.) In his order, Judge Shubb stated,

> Plaintiff names ten defendants in this case: T. Virga, Warden at CSP-Sac, and Drs. Hamkar and Curren. (See Pl.'s Am. Compl. at 2.) In his objections to the F&Rs, plaintiff points out that Drs. Hamkar and Curren are employed by the C.D.C.R. (See Pl.'s Objections at 2.) While service of process was directed to these defendants at CSP-Sac, (see Docket No. 44), it is not clear whether these doctors work solely at CSP-Sac or provide services at multiple prisons. Nor is it clear whether these doctors have the authority to deliver mental and medical care to plaintiff at CSP-Corcoran. Defendants' location does not conclusively indicate the scope of their authority. Without further investigation into this matter, the court cannot conclude that an injunction against Dr. Hamkar and Dr. Curren could not provide the plaintiff with relief.

(ECF No. 76 at 3.)

Judge Shubb remanded this matter to the undersigned for further consideration of whether an injunction directed to any of the named defendants could provide the plaintiff with the relief he requests. (Id. at 3-4.)

On October 15, 2014, the undersigned issued an order directing further briefing in accordance with Judge Shubb's order. (ECF No. 77.) In this order, the undersigned observed that since the undersigned issued the findings and recommendations, plaintiff was transferred to the California Medical Facility ("CMF"). (ECF No. 73.) Based on this changed circumstance, plaintiff's motion for injunctive relief concerning conditions at Corcoran is moot. (ECF No. 77.) However, in accordance with Judge Shubb's order, the undersigned directed defendants to file briefing addressing whether any defendant was able to deliver medical and/or mental health care to plaintiff at any prison other than CSP-Sac. (Id.) In an abundance of caution, the undersigned also directed Supervising Deputy Attorney General Monica Anderson to file a status report

2

addressing the status of plaintiff's mental health and mental health treatment at CMF.  (Id.)

On October 29, 2014, defendants filed a response addressing all of the issues raised in the October 15, 2014 order.  (ECF No. 80.)  Defendants observe that plaintiff's first amended complaint names two health care providers, Dr. Hamkar and Dr. Curren.  (Id. at 2.)  None of the other defendants provide medical or mental health care to inmates, so defendants Hamkar and Curren are the only defendants who could potentially deliver medical or mental health care to plaintiff.  (Id.)

Defendant Hamkar is employed at the California Institution for Men.  (ECF No. 80-1 at 1.)  Defendant Curren remains employed at CSP-Sac.  (ECF No. 80-2 at 1.)  Their privileges do not extend to other institutions, so they are not authorized to treat patients at CMF, where plaintiff is now housed.  (ECF Nos. 80-1 at 1, 80-2 at 1.)

With regard to the status of plaintiff's mental health treatment at CMF, defendants submitted the declaration of Dr. Sutherland, a staff psychiatrist at CMF.  (ECF No. 80-3.)  Dr. Sutherland is one of plaintiff's treating psychiatrists.  (Id. at 1.)  Dr. Sutherland states,

> 2. Mr. Farley is currently being treated by the Department of State Hospitals in the Acute Psychiatric Program ("APP") located at CMF.  This is the highest acuity psychiatric program available within the California Department of Corrections and Rehabilitation ("CDCR") prison system.  Mr. Farley has been housed in the APP since approximately September 17, 2014.
>
> 3. The APP operates under CMF's General Acute Care License. The APP consists of licensed inpatient psychiatric program beds, with seven units and three yards.  The APP is guided by the biopsychosocial rehabilitation model.  This model recognizes the interrelationship of factors that contribute to mental illness, including brain impairment, inter-psychic abnormalities, and environmental, situational, and social factors.  This treatment approach is designed to address each of these three areas, through pharmacotherapy, group and individual therapy, and the program's structure and milieu.  The theoretical framework of non-medical treatment is cognitive behavioral.  Sufficient flexibility is maintained in order to accommodate a wide range of special needs and functioning levels.  Implementation of the clinical program is accomplished through an interdisciplinary treatment planning and decision making structure.  The professional disciplines of Psychiatry, Psychiatric Social Work, Psychology, Nursing, Dietetics, and Rehabilitative Therapy constitute a multidisciplinary approach to patient evaluation and treatment.  An integral and ongoing program evaluation system is maintained in order to provide an accurate and continuing description of the patient

>    population, as well as to measure treatment efficacy.
>
>    4. Mr. Farley variously self-reports diagnoses of mood disorder, bipolar disorder, impulse control disorder, psychotic disorder, polysubstance dependence, antisocial disorder, posttraumatic stress disorder, and acute deficit hyperactivity disorder. However, there have been many inconsistencies in his stories regarding his alleged diagnoses, and each story has a manipulative or self-serving quality so it seems likely that, other than malingering and polysubstance abuse, Mr. Farley's symptoms appear attributable to his Axis II personality disorders or possibly posttraumatic stress disorder. However, Mr. Farley frequently changes his reported symptoms in a misguided attempt to manipulate his housing placement.
>
>    5. As of October 17, 2014, Mr. Farley reported his mood as "0" with 0 being good and 10 being bad. Mr. Farley has not expressed any suicidal ideations or engaged in any self-injurious behaviors since his admission to the APP. Mr. Farley is presently compliant with medication and treatment, and, for the most part, has been regularly attending his scheduled programs and appointments. Mr. Farley did refuse to attend his Interdisciplinary Treatment Team meeting on October 20, 2014, but attended the following day. During that meeting, he minimized his own behavior and blamed others for his actions.
>
>    6. As recently as October 27, 2014, the Interdisciplinary Treatment Team made the medical determination to discharge Farley to an Enhanced Outpatient ("EOP") level of care. Farley was unhappy with this determination and stated that "he would probably be suicidal" if he was downgraded to EOP status and his housing changed accordingly. Mr. Farley's suicidal ideations are situational and directed only be his desire to be [sic] manipulate his housing assignment.

(Id. at 1-3.)

Analysis

As noted above, plaintiff's pending motion seeks injunctive relief regarding conditions at Corcoran. Plaintiff has since been transferred to CMF. When an inmate seeks injunctive or declaratory relief concerning the prison where he is incarcerated, his claims for such relief become moot when he is no longer subjected to those conditions. See Weinstein v. Bradford, 423 U.S. 147, 149 (1975); Dilley v. Gunn, 64 F.3d 1365, 1368-69 (9th Cir. 1995). On this ground, plaintiff's motion for injunctive relief should be denied.

Accordingly, IT IS HEREBY RECOMMENDED that plaintiff's June 10, 2014 motion for injunctive relief (ECF No. 56) be denied.

////

4

1    These findings and recommendations are submitted to the United States District Judge
2  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days
3  after being served with these findings and recommendations, any party may file written
4  objections with the court and serve a copy on all parties.  Such a document should be captioned
5  "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the
6  objections shall be filed and served within fourteen days after service of the objections.  The
7  parties are advised that failure to file objections within the specified time may waive the right to
8  appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).
9  Dated:  October 31, 2014

11  Far1751.inj(2)

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE